IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BJORN ERIK HAAPANIEMI, formerly known as PETER LEE NORRIS,<br>　　Petitioner,<br><br>v.<br><br>WARDEN HIJAR,<br>　　Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br><br>EP-21-CV-309-DCG |

## MEMORANDUM OPINION AND ORDER

Bjorn Erik Haapaniemi, formerly known as Peter Lee Norris, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pet'r's Pet., ECF No. 1-1. He asks the Court to order the Bureau of Prisons (BOP) to change his "primary name" in its records from "Norris" to "Haapaniemi." Id. at 7. He also challenges his convictions in the United States District Court for the District of Alaska. Id. His petition is denied for the following reasons.

### BACKGROUND

Haapaniemi is a 57-year-old federal prisoner serving a 108-month sentence for stalking and making threatening communications. Id. His projected release date is July 3, 2027. See Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 22106-508) (last visited Jan. 6, 2022). He is currently incarcerated at the La Tuna Federal Correctional Institution in Anthony, Texas. Id. His place of confinement is in El Paso County, Texas, which is within the jurisdiction of the United States District Court for the Western District of Texas. 28 U.S.C. § 124(d)(3).

Haapaniemi started sexually abusing his seventeen-year-old biological daughter in 2003 while they lived in Arizona. See United States v. Norris, 3:19-CR-00078-1-RRB (D. Alaska),

Sentencing Mem. 5, ECF No. 90; see also id., Plea Agreement 4–8, ECF No. 35.[1] He married his biological daughter in 2005. Id., Sentencing Memo. 5, ECF No. 90. His incestuous relationship produced children in 2003, 2006, and 2007. Id. After the birth of his third child, he moved his family to Alaska. Id.

In August 2018, a physician in Alaska expressed concern about the potential sexual abuse of Haapaniemi's granddaughter. Id. He referred the case to the Alaska Office of Children's Services (OCS) for further investigation. Id.

Meanwhile, officers with the Scottsdale Police Department opened an investigation into allegations that Haapaniemi sexually abused his daughter while they lived in Arizona. Id. at 6. Their investigation led to a ten-year sentence for sexual conduct with a minor in cause number CR2009-007808-001 in the Superior Court of Arizona. Id. at 7.

While incarcerated in Arizona, Haapaniemi learned an OCS investigator, K. H., had cooperated with the Scottsdale police officers. Id. at 8. As a result, he started stalking the investigator by sending her threatening letters through the United States mail. He said he would reveal sensitive digital information unless K. H. fulfilled his demands. Id. at 8–9. He also mailed threatening letters and attempted to extort concessions from an attorney. Id. at 10–11. And he attempted to extort concessions from an FBI special agent assigned to his case. Id. at 11–12. He

---

[1] Federal Rule of Evidence 201 permits the Court "to take judicial notice of an adjudicative fact if the fact is not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to resources whose accuracy cannot be questioned." Ferguson v. Extraco Mortgage Co., 264 F. App'x 351, 352 (5th Cir. 2007) (citing Taylor v. Charter Med. Corp., 162 F.3d 827, 829 (5th Cir. 1998) (internal quotation marks omitted). The Court may take judicial notice of matters of public record. See Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011). The Court "may take judicial notice on its own." Fed. R. Evid. 201(c)(1).

claimed he would injure the property and reputation of others if the FBI special agent failed to comply with his demands. Id.

A grand jury in Alaska indicted Haapaniemi under the name "Peter Lee Norris, a/k/a Peter Lee Bjorn Norris." Id., Indictment, ECF No. 2. It charged him with stalking the OCS investigator, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(6) (Count One); extortion, in violation of 18 U.S.C. § 876(d) (Count Two); and mailing threatening communications to a federal law enforcement officer, also in violation of 18 U.S.C. § 876(d) (Count Three). Id.

Haapaniemi elected to pled "guilty to the following count(s) of the Indictment in this case: Count 1: Stalking, in violation of 18 U.S.C. § 2261A(2)(B); and Count 3: Mailing Threatening Communications, in violation of 18 U.S.C. § 876(d)." Id., Plea Agreement 2, ECF No. 35. He agreed to the following factual summary in the plea agreement:

Count 1: Stalking K.H.

Regarding Count 1, beginning not later than approximately May 25, 2010, and continuing through approximately April 3, 2019, the defendant knowingly used the United States Postal Service to engage in a course of conduct that caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to K.H., an immediate family member of K.H., or a spouse or intimate partner of K.H. Specifically, the defendant mailed many letters and postcards to K.H. The defendant intended to harass or intimidate K.H., or place K.H. under surveillance with the intent to harass or intimidate K.H.

In the letters, the defendant accused K.H. of harming him in various ways, made a variety of demands, and threatened to hurt K.H. and others in a variety of ways. The defendant claimed to be a sophisticated hacker who had already acquired sensitive OCS files regarding other people's children and the contents of email accounts of state workers, law enforcement officers, and medical personnel. The defendant threatened to destroy or reveal this sensitive digital information unless K.H. or others fulfilled his demands. The defendant reminded K.H. of his anticipated release date of November 1, 2019.

For example, in a letter dated June 27, 2017, the defendant wrote: "you

tricked me - you told me that if I signed a termination of parental rights, I'd get a yearly report. That was my entire reason for not fighting and possibly losing to the end." "You killed my mother, destroyed my family, took everything I had except my money, and if you can think of one reason, at 52 years old now, I would not devote my life to destroying yours, I'll be glad to listen." The defendant demanded that K.H. "answer my questions" and "give me a letter" writing that "you + I are going to discuss the yearly reports," and warning that it is her "last chance." The defendant wrote: "I can tell what kind of shampoo you buy or wipe out your entire digital life, credit report, and if I wanted, Social Security number." The defendant threatened to make Alaska State Government computer systems "go bye-bye," even while in custody, with the assistance of his "hacker friends" spread around the world.

The defendant knowingly violated a temporary or permanent civil or criminal injunction, restraining order, no contact order, or other order described in 18 United States Code Section 2266; specifically, protective orders issued by the State of Alaska District Court in 3AN-17-01703CI, and 3AN-18-00915CI, which forbade him from stalking, contacting, or communicating with K.H.

The defendant targeted K.H. because of K.H.'s work on behalf of the Alaska Office of Children Services ("OCS") in an investigation regarding the defendant and his children.

Count 3: Mailing a Threatening Communication to W.T.

Regarding Count 3, on or about April 24, 2019, through April 30, 2019, the defendant intended to extort anything of value from any natural person, and, to accomplish that goal, knowingly deposited into the United States Postal Service, and caused to be delivered, a letter addressed to W.T. The defendant knew the letter contained a threat to injure the property or reputation of another person. The defendant mailed the letter from Arizona to Alaska.

The defendant knew that W.T. was a Federal law enforcement officer because W.T. and other law enforcement officers interviewed the defendant, while he was in custody at Arizona Department of Corrections - Eyman, on or about April 23, 2019, and, again, on May 22, 2019. Prior to the first interview, W.T. identified herself to the defendant as an FBI Special Agent. W.T. invited the defendant to write letters to W.T. and mail them to her in Alaska.

The defendant was motivated to send the letter to W.T. because she was an FBI Special Agent. In the letter, the defendant offered W.T. a "compromise + solution" in which "if you help me, I will help you." However, the defendant also wrote that "I won't do it one-sided - some things need to be ironed out."

The defendant wrote that he wanted W.T. to fulfill four tasks, which were

4

things of value to the defendant: first, acquiring "my reports on kids I was promised" (i.e. the reports that [the OCS investigator] did not provide to the defendant after he relinquished parental rights in the [child in need of assistance] case); second, "push[ing] along" the processing of a document the defendant described as a formal renouncement of his United States citizenship; third, "act[ing] as intermediary between" the defendant and the Sexual Conduct victim "to resolve some issues"; and, fourth, "last but not least," "educat[ing]" Arizona probation officers. Regarding this fourth task, the defendant asked that W.T. persuade probation officers to allow the defendant to have contact with a person whom the defendant described as co-owning a business with the defendant, but whom probation officers had forbidden the defendant to contact.

The defendant's letter contained a threat that, if W.T. failed to fulfill the defendant's tasks, the defendant would injure the property or reputation of another person by "ordering others to issue mayhem."

Id., Plea Agreement 5–8, ECF No. 35.

At his plea hearing, he stated under oath that "every bit" of the factual summary read from the plea agreement into the record by the prosecutor was true. Id., Plea Tr. 24:10–28:16, ECF No. 45-1. He also engaged in the following exchange with the Court:

> THE COURT: Okay. So you've been charged here by way of an indictment. Count 1 charges you with stalking in violation of 18 U.S.C. 2261(a)(2)(B) [sic], and 2261(b)(6). How do you plead; guilty or not guilty?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: And you've been charged, I guess, with Count 3, mailing threatening communications in violation of 18 U.S.C. 876(d). How do you plead to that; guilty or not guilty?
>
> THE DEFENDANT: Guilty, as well.
>
> THE COURT: Pardon?
>
> THE DEFENDANT: Guilty, as well.
>
> THE COURT: Okay. Well, it appears to me, sir, that you're fully competent and capable of entering an informed plea, that you're aware of all your rights, that your guilty pleas just entered were made freely and voluntarily and knowingly, no

one's threatened you or coerced you, and that you're in control of all your faculties this morning. You can know, understand, and comprehend the consequences of the guilty pleas, and you've had the advice of legal counsel throughout the process, including the plea negotiation process, and you're satisfied with counsel. Would you agree with all that?

THE DEFENDANT: Yes, I do.

Id., Plea Tr. 28:17–29:14. He was accordingly found guilty of stalking, in violation of "18 U.S.C. §§ 2261A(2)(B) and 2261(b)(6)" and "18 U.S.C. § 876(d)," as alleged in the indictment. Id., J. Crim. Case 1, ECF No. 101. He was sentenced to 108 months' confinement. Id., J. Crim. Case 2. He was also ordered to serve his federal sentence consecutively to his state-imposed sentence. Id.

Haapaniemi did not file a direct appeal—but he did file a motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255 in the sentencing court. Id., Mot. to Vacate, ECF No. 111. He claimed his communications with the FBI special agent were protected speech under the First Amendment. Id. at 4. He also explained he never threatened bodily harm—he only threatened to erase a "digital existence." Id. at 7.

The sentencing court denied Haapaniemi's § 2255 motion. Id., Order, ECF No. 126. It reasoned Haapaniemi voluntarily waived any claim of actual innocence in the Plea Agreement and subsequent colloquy—and the Government was not required to prove that he threatened bodily harm to any person as "he was not accused of threatening physical harm." Id. at 1.

In his petition, Haapaniemi asks the Court to order the BOP to change his "primary name" from "Norris" to "Haapaniemi." Pet'r's Pet. 7, ECF No. 1-1. He also asks the Court to vacate his conviction on Count One as "invalid" because he claims he "was indicted on [18 U.S.C. §] 2261(a)(2)(b), identified by the trial court as 'stalking,'" when the correct stalking statute is 18 U.S.C. § 2261A(2)(b). Id. (citing the reference to 18 U.S.C. 2261(a)(2)(B) in the plea

transcript at 28:19). He further suggests his conviction on Count Two is invalid as his communications with the FBI special agent were protected speech under the First Amendment. Id.

## APPLICABLE LAW

As a preliminary matter, a reviewing court must determine whether a claim is properly raised in a § 2241 petition. "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." 28 U.S.C. foll. § 2254 R. 4; see R. 1 ("The district court may apply any or all of these rules to a habeas corpus petition . . .").

### A. 28 U.S.C. § 2241

"A section 2241 petition for habeas corpus on behalf of a sentenced prisoner attacks the manner in which his sentence is carried out or the prison authorities' determination of its duration." Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted). To prevail, a § 2241 petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). A § 2241 petitioner may make this attack only in the district court with jurisdiction over his custodian. United States v. Cleto, 956 F.2d 83, 84 (5th Cir. 1992).

### B. 28 U.S.C. § 2255

By contrast, a motion to vacate or correct a sentence pursuant to 28 U.S.C. § 2255 "'provides the primary means of collateral attack on a federal sentence.'" Pack, 218 F.3d at 451 (quoting Cox v. Warden, 911 F.2d 1111, 1113 (5th Cir. 1990)). Relief under § 2255 is warranted for errors that occurred at trial or sentencing. Cox, 911 F.2d at 1114 (5th Cir. 1990); Ojo v. INS,

106 F.3d 680, 683 (5th Cir. 1997); Solsona v. Warden, F.C.I., 821 F.2d 1129, 1131 (5th Cir. 1987). A § 2255 movant may only bring his motion in the district of conviction and sentence. Pack, 218 F.3d at 452.

### C. Savings Clause

As a result, a federal prisoner who wants to challenge his conviction or sentence must generally seek relief under § 2255. Padilla v. United States, 416 F.3d 424, 426 (5th Cir. 2005). But he may raise his claims in a § 2241 petition if they fall within the "savings clause" of § 2255(e). Id. Section 2255(e) provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, <u>unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention</u>.

28 U.S.C. § 2255(e) (emphasis added). Case law establishes a petitioner must satisfy a two-prong test to successfully invoke the savings clause:

> [T]he savings clause of § 2255 applies to a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion.

Reyes-Requena v. United States, 243 F.3d 893, 904 (5th Cir. 2001). Moreover, a petitioner must prove both prongs. Padilla, 416 F.3d at 426. Indeed, a § 2241 petition is not a mere substitute for a § 2255 motion, and a petitioner bears the burden of showing that the § 2255 remedy is inadequate or ineffective. Reyes-Requena, 243 F.3d at 901 (citing Pack, 218 F.3d at 452; Kinder v. Purdy, 222 F.3d 209, 214 (5th Cir. 2000)).

## ANALYSIS

### A. Name Change

Haapaniemi first asks the Court to direct the BOP to change his "primary name" from "Norris" to "Haapaniemi." Pet'r's Pet. 7, ECF No. 1-1. He submits evidence he legally changed his name to Haapaniemi on June 19, 2020. Id. at 11.

According to the BOP Correctional Systems Manual, "[t]he name entered on the [judgment and commitment] is considered the committed name to be used by the inmate, as well as the Bureau. SENTRY must reflect the committed name, which may only be changed by an order from the Federal sentencing court." BOP Program Statement 5800.15, Correctional Systems Manual § 402(d) (Jan. 1, 2009), available at https://www.bop.gov/policy/progstat/5800_015.pdf. (last visited Jan. 6, 2022).

The Court is not the sentencing court. Moreover, even if it was the sentencing court it could not grant relief because the Fifth Circuit Court of Appeals has held an inmate's "request to change the name on his judgment [is] an unauthorized motion that the district court lack[s] jurisdiction to entertain" because it does "not fall into any of the recognized categories of postconviction motions." United States v. Varner, 948 F.3d 250, 254 (5th Cir. 2020).

Consequently, the Court is without jurisdiction to address Haapaniemi's request.

### B. Convictions

Haapaniemi also challenges his convictions. He argues his conviction on Count One is "invalid" because he asserts—incorrectly—he "was indicted on [18 U.S.C. §] 2261(a)(2)(b), identified by the Court as 'stalking,'" when 2261A(2)(b) is the "'stalking'" statute. Pet'r's Pet. 7, ECF No. 1-1 (citing the erroneous reference to 18 U.S.C. 2261(a)(2)(B) in the plea transcript at

9

28:19). He suggests his conviction on Count Two is similarly invalid because his communications with the FBI special agent were protected speech under the First Amendment. Id.

As the Court notes above, a § 2255 motion—not a § 2241 petition—"'provides the primary means of collateral attack on a federal sentence.'" Pack, 218 F.3d at 451. Nonetheless, the savings clause in § 2255(e) allows a district court with jurisdiction over a prisoner's custodian to entertain a § 2241 petition challenging a federal sentence if it first concludes that a § 2255 motion is inadequate to challenge a prisoner's detention. 28 U.S.C. § 2255(e).

The first prong of the § 2255(e) savings clause test is, essentially, an "actual innocence" requirement whose "core idea is that the petitioner may have been imprisoned for conduct which was not prohibited by law." Reyes-Requena, 243 F.3d at 903. The second prong requires a petitioner to show his "argument falls within the scope of, and is excluded by, a prior holding of a controlling case." Garland v. Roy, 615 F.3d 391, 398 (5th Cir. 2010).

Haapaniemi claims he pleaded guilty to a violation of 18 U.S.C. § 2261(a)(2)(B). Pet'r's Pet. 7, ECF No. 1-1 (citing the reference to 18 U.S.C. § 2261(a)(2)(B) in the plea transcript at 28:19). He observes a person violates § 2261(a)(2)—there is no (B)—only if he "commits or attempts to commit a crime of violence against [a] spouse, intimate partner, or dating partner" while engaging in interstate or foreign commerce. Id. (quoting 18 U.S.C. § 2261(a)(2)). He notes the factual basis does not suggest he committed a crime of violence against a spouse, intimate partner, or dating partner. Id. Hence, he argues his conviction on Count One is "invalid." Id. He accordingly asks the Court to vacate his conviction on Count One. Id.

Haapaniemi was indicted in Count One for stalking the OCS investigator, in violation of

18 U.S.C. §§ 2261A(2)(B) and 2261(b)(6). Norris, 3:19-CR-00078-1-RRB (D. Alaska), Indictment, ECF No. 2. He agreed to pled "guilty to . . . [s]talking, in violation of 18 U.S.C. § 2261A(2)(B)." Id., Plea Agreement 2, ECF No. 35. The factual summary at the plea hearing supported a conviction for a violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(6). Id., Plea Tr. 24:10–26:10, ECF No. 45-1. The reference to "18 U.S.C. § 2261(a)(2)(B)" in the plea transcript—not 18 U.S.C. § 2261A(2)(B)—was clearly in error made by the court reporter. Id., Plea Tr. 28:19. Consequently, he is not actually innocent.

Haapaniemi also suggests he was imprisoned for the conduct described in Count Three which was not prohibited by law. Pet'r's Pet. 7, ECF No. 1-1. He suggests he was merely exercising his First Amendment rights.

Count Three of the indictment alleged Haapaniemi mailed threatening communications to a federal law enforcement officer in violation of 18 U.S.C. § 876(d). Norris, 3:19-CR-00078-1-RRB (D. Alaska), Indictment, ECF No. 2. Section 876(d) provides:

> Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 876(d).

Haapaniemi admitted to all the elements of this offense in his plea agreement and under oath at his plea hearing. Norris, 3:19-CR-00078-1-RRB, Plea Agreement 7–8, ECF No. 35; Id.,

11

Plea Tr. 26:11–28:16. Consequently, the record once again clearly shows Haapaniemi was not actually innocent.

Moreover, Haapaniemi does not identify a Supreme Court decision retroactively applicable to his case which establishes that he may have been convicted of nonexistent offenses. He also does not argue his claims were foreclosed by circuit law at the time he raised it before the trial court, in an appeal, or in his first § 2255 motion. Indeed, he unsuccessfully raised the First Amendment claim in a § 2255 motion—which the sentencing court denied on both procedural and substantive grounds. Id., Mot. to Vacate 7, ECF No. 111; id., Order, ECF No. 126. His "prior unsuccessful § 2255 motion, or the inability to meet [the Anti-Terrorism and Effective Death Penalty Act's] 'second or successive' requirement, does not make § 2255 inadequate or ineffective." Tolliver v. Dobre, 211 F.3d 876, 878 (5th Cir. 2000).

## CONCLUSION AND ORDERS

The Court finds that Haapaniemi cannot satisfy either prong of the § 2255(e) savings clause test. Reyes-Requena, 243 F.3d at 904. Hence, it finds that he cannot meet his burden of demonstrating the inadequacy or ineffectiveness of a § 2255 motion properly filed in the sentencing court. It therefore concludes that his claims are not cognizable in this Court in a § 2241 habeas corpus action. It also concludes that it plainly appears from the petition that the Haapaniemi is not entitled to § 2241 relief in this Court. It accordingly enters the following orders:

**IT IS ORDERED** that Haapaniemi's pro se "Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241" (ECF No. 1-1) is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that, to the extent that Haapaniemi's petition may be construed as a second or successive motion under 28 U.S.C. § 2255, he is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

SIGNED this 10th day of January 2022.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE